**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| EDDIE LEE CONTON, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> BEN HILL COUNTY, GEORGIA, and : <br> SHERIFF BOBBY MCLEMORE, : <br> in his individual capacity, : <br> : <br> Defendants. : <br> : | CASE NO.:   1:13-CV-149 (LJA) |

## ORDER

Defendants Ben Hill County's ("Ben Hill") and Sheriff Bobby McLemore ("Sheriff McLemore") have moved for summary judgment on Plaintiff Eddie Lee Cotton's Section 1983 and state law claims arising out of his arrest in 2012. For the following reasons, Defendants' Motions (Docs. 25, 27) are **GRANTED**.

## BACKGROUND

This action concerns the arrest of Plaintiff and the seizure of his cattle for alleged animal cruelty.[1] On March 24, 2012, Deputy Billy Leonard ("Deputy Leonard"), a deputy sheriff of the Ben Hill County Sheriff's Department, observed that Plaintiff's cattle were tied with ropes to trees and other objects, preventing them from accessing food or water. Deputy Leonard subsequently informed Sheriff McLemore of the condition of the cattle, who, in turn, contacted Joe A. Thomas, a livestock supervisor at the Georgia Department of

---

[1] The relevant facts are derived from the Amended Complaint (Doc. 7), Defendants' Answer to the Amended Complaint (Doc. 13), Sheriff McLemore's Statement of Material Facts (Doc. 25-1); Ben Hill's Statement of Material Facts (Doc. 27-1), Plaintiff's Responses to Defendants' Statements of Material Facts (Docs. 34-1, 36-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Agriculture. Sheriff McLemore requested that Mr. Thomas send an inspector to meet with Deputy Leonard to assess the condition of the cattle.

On March 29, 2012, Deputy Leonard met Van Sapp, a livestock inspector with the Georgia Department of Agriculture, at the Plaintiff's property to evaluate the condition of the cattle. Mr. Sapp concluded that Plaintiff's cattle were starving and, based upon the manner in which they were restrained, the cattle were unable to access food, water, or shade. As a result, Deputy Leonard believed he had probable cause to arrest Plaintiff and impound his cattle for animal cruelty in violation of O.C.G.A. § 16-12-4(b). Consequently, Deputy Leonard arrested Plaintiff and coordinated with South Central Livestock to move the cattle to its facilities for treatment and care. Deputy Leonard was later advised that he would need to have separate warrants for each animal at issue, which resulted in Plaintiff being arrested again on April 10, 2015. Plaintiff was bonded out on both occasions and did not spend the night in jail. Plaintiff's cattle were returned to him after he successfully repaired his fence to allow the cattle to roam freely.

On September 10, 2013, Plaintiff, proceeding *pro se*, commenced this action, asserting federal constitutional tort claims, pursuant to 42 U.S.C. § 1983, for arrest without probable cause and deprivation of property without due process of law. (Doc. 1.) On December 9, 2013, Plaintiff amended his complaint, again asserting federal constitutional claims, but also adding claims pursuant to the Georgia Constitution. (Doc. 7.) Because Plaintiff's Amended Complaint was filed outside the 21-day "matter of course" window and because Plaintiff failed to seek leave from the Court or the consent of the Defendants, the Court ordered Plaintiff to show cause as to why the amended complaint should not be dismissed. (*See* Doc. 9.) In response, Plaintiff referenced his *pro se* status as the reason for his filing and asked the Court to allow him to file his amended complaint to "clarify the issues." (Doc. 10 at 2.)

On February 10, 2014, the Court granted Plaintiff leave to file the amended complaint, but dismissed several of the claims, including Plaintiff's § 1983 claims against Ben Hill and his claims against Sheriff McLemore in his official capacity. (*See* Doc. 12.) Thus, the only claims the Court allowed to proceed were the federal and state constitutional claims

against Sheriff McLemore, in his individual capacity, and Plaintiff's state law claims against Ben Hill.

On May 28, 2015, Sheriff McLemore and Ben Hill each moved for summary judgment on Plaintiff's remaining claims. (Docs. 25, 27.) On June 26, 2015, Plaintiff submitted a 36-page response to Sheriff McLemore's Motion (Doc. 34), and, on July 6, 2015, Plaintiff filed his response to Ben Hill's Motion. (Doc. 36.) On July 10, 2015, Sheriff McLemore filed his reply, requesting that the Court strike pages 21-36 for violations of Local Rule 7.4. (*See* Doc. 37.)

Local Rule 7.4 provides that, absent leave from the Court, "all briefs in support of a motion or in response to a motion are limited in length to twenty (20) pages." M.D. Ga. L.R. 7.4. Plaintiff did not seek leave to exceed the page limit set forth in Local Rule 7.4. Plaintiff also failed to file his respective responses within the twenty-one-day deadline provided under Local Rule 7.2. Plaintiff offers no explanation for exceeding the page limit or untimely filing his responses. Although *pro se* plaintiffs are held to less stringent standards than lawyers, Plaintiff's *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure or the Local Rules of this Court. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure"). Moreover, the leniency to which pro se litigants are entitled "does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

This is not Plaintiff's first case before this Court. In fact, Plaintiff has appeared *pro se* in at least three other cases prior to commencing this action. *See Cotton v. Bank of America*, 1:08-CV-77 (M.D. Ga.); *Cotton v. G.S. Development*, 1:05-CV-116 (M.D. Ga.); *Cotton v. Shoney's Inn*, 1:98-CV-49 (M.D. Ga.). Plaintiff should therefore know and adhere to the applicable procedural rules. However, given that Plaintiff's non-compliant filings will not affect the ultimate resolution of this matter, the Court will not strike them.

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment at any time. Fed. R. Civ. P. 56(b). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be

considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court, however, must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Local Rule 56 requires that the movant attach to its motion for summary judgment a separate and concise statement of material facts to which the movant contends there is no genuine issue to be tried. M.D. Ga. L.R. 56. The non-movant must then respond "to each of the movant's numbered material facts." *Id.* "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Moreover, the "respondent to a motion for summary judgment may not assert insufficient knowledge to admit or deny a material fact asserted by the movant unless the respondent has complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure." *Id.*

Plaintiff's respective responses to Defendants' Statements of Material Facts largely consist of unsupported and conclusory assertions without any citation to the record. Thus, Plaintiff has failed to comply with Local Rule 56. The Court, however, "cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *United States v. Delbridge*, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (citing *Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004)). Instead, the Court must undertake an independent review of "the evidentiary materials submitted in support of the motion" to ensure that the Defendants have met their burden of

5

demonstrating the absence of a genuine issue of material fact. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004); *see also Delbridge*, 2008 WL 1869867, at *3 (finding that the "Court must make an independent review of the record," even if the non-movant fails to respond to the statement of material facts). Having established the applicable standards, the Court will now proceed with reviewing the merits of Defendants' Motions.

## DISCUSSION

### I. Federal Claims

As noted above, the only federal claims that remain in this action are Plaintiff's Section 1983 claims against Sheriff McLemore, in his individual capacity, for arrest without probable cause and deprivation of property without due process. The Court allowed these claims to proceed based on Plaintiff's allegation that Sheriff McLemore "seized the cattle and impounded said cattle without due notice to the Plaintiff." (Doc. 12 at 9.) Sheriff McLemore contends that he is entitled to summary judgment because Plaintiff has failed to point to any evidence showing that he participated in the decision to arrest Plaintiff and impound the cattle. According to Sheriff McLemore, Deputy Leonard solely made that decision based on the report he received from Mr. Sapp. In response, Plaintiff asserts that Sheriff McLemore participated in the arrest by conversing with Deputy Leonard on March 24, 2011, and requesting that Mr. Thomas send an inspector to assess the condition of the cattle, such that he should be liable under the theory of supervisory liability.

Contrary to Plaintiff's contention that "a Claim of Respondeat Superior Liability can arise out of a suit at 42 U.S.C 1983," (Doc. 34-2 at 24), "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley*, 193 F.3d at 1269). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* The necessary causal connection can be established by showing that: (1) a history of widespread abuse puts the

responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) the facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Id.* "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

It is undisputed that Sheriff McLemore was not present at the time Deputy Leonard arrested Plaintiff and impounded the cattle. There is also no evidence that Sheriff McLemore instructed or directed Deputy Leonard to arrest Plaintiff. Rather, the record reflects that the probable cause determination was made exclusively by Deputy Leonard based on the report he received from Mr. Sapp. That Sheriff McLemore requested an inspector to meet Deputy Leonard at the property is not sufficient to establish that Sheriff McLemore personally participated in the alleged unconstitutional conduct. It is also insufficient to support an inference that Sheriff McLemore directed Deputy Leonard to act unlawfully or knew that Deputy Leonard would act unlawfully prior to Plaintiff's arrest, but failed to stop him from doing so.

Likewise, Plaintiff has failed to offer any evidence that Sheriff McLemore had a policy or custom that allegedly caused his arrest and the impoundment of the cattle, or that Sheriff McLemore was deliberately indifferent. As the Supreme Court has stated, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Plaintiff has made no such showing here, and his conclusory allegations to the contrary are insufficient to meet the "extremely rigorous" standard necessary to impose supervisory liability. *Cotton*, 749 F.3d at 1360; *see generally Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

Furthermore, even if Plaintiff could establish that Sheriff McLemore personally participated in the arrest and the impoundment of the cattle, his Section 1983 claims would still fail. It is well-settled that "a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013). Plaintiff alleges that his constitutional rights were violated because Deputy Leonard lacked probable cause to arrest him and unlawfully seized his cattle in violation of Georgia law.

"[A]n arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (internal quotation marks and citations omitted). "This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and even seemingly innocent activity can provide the basis for probable cause." *Myers*, 713 F.3d at 1326 (citation and quotations omitted). "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern. *Skop*, 485 F.3d at 1137 (internal citation omitted).

Plaintiff was arrested for misdemeanor animal cruelty in violation of O.C.G.A. § 16-12-4(b). O.C.G.A. § 16-12-4(b) provides that:

(b) A person commits the offense of cruelty to animals when he or she:

(1) Causes physical pain, suffering, or death to an animal by any unjustifiable act or omission; or

(2) Having intentionally exercised custody, control, possession, or ownership of an animal, fails to provide to such animal adequate food, water, sanitary conditions, or ventilation that is consistent with what a reasonable person of ordinary knowledge would believe is the normal

8

> requirement and feeding habit for such animal's size, species, breed, age, and physical condition.

At the time of Plaintiff's arrest, Deputy Leonard observed Plaintiff's cattle with their feet and necks restrained by rope, and unable to access food, water, or shade. Mr. Sapp, a livestock inspector, agreed that the cattle were being mistreated and recommended that they be impounded and given medical treatment. Under these circumstances, a reasonable officer could believe that probable cause existed to arrest Plaintiff for violating O.C.G.A. § 16-12-4(b)(2). *See Cotton v. State*, 589 S.E.2d 610, 612 (Ga. Ct. App. 2003) (upholding conviction under O.C.G.A. § 16-12-4(b) where evidence showed that "the cows were confined in a very small pen, that there was no water in their pen on the day the deputy and agriculture inspector released them from the pen, that they were thin and desperate for water, and that they suffered from a lack of water"). Accordingly, Plaintiff suffered no constitutional deprivation at the time he was arrested.

Plaintiff also asserts that that Deputy Leonard violated his constitutional rights by unlawfully impounding his cattle. In support, Plaintiff cites to O.C.G.A. § 4-11-9.2(d), which requires that, before impounding an animal, "a licensed accredited veterinarian approved by the Commissioner or a veterinarian employed by a state or federal government and approved by the Commissioner . . . examine and determine the condition or treatment of the animal." Plaintiff contends that because Mr. Sapp was not a qualified veterinarian, Deputy Leonard violated O.C.G.A. § 4-11-9.2(d) and is, thus, liable under Section 1983. Contrary to Plaintiff's assertions, "Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 698-99 (1976)). "While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983." *Id.* (citations omitted); *see also Lovins v. Lee*, 53 F.3d 1208, 1211 (11th Cir. 1995) ("[T]he defendants' violation of that state statute did not give rise to a viable substantive due process claim.").

Plaintiff has cited no authority for the proposition that a violation of Georgia law governing the impoundment of animals contravenes federal law or violates a federal right. Thus, even if Deputy Leonard failed to comply with O.C.G.A. § 4-11-9.2(d) by not having a

qualified veterinarian examine the cattle before impounding them, Plaintiff has not shown that such failure "deprived him of a right secured by the Constitution or federal law." *Hayes v. Sec'y, Florida Dep't of Children & Families*, 563 F. App'x 701, 702-03 (11th Cir. 2014) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). Accordingly, Plaintiff's Section 1983 claim for the impoundment of his cattle fails as a matter of law.

Moreover, even assuming, *arguendo*, that the impoundment of the cattle violated Plaintiff's federal rights, Plaintiff's claim would still be subject to dismissal. The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* Thus, "[e]ven assuming the continued retention of [Plaintiff's cattle] is wrongful, no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009). "The state of Georgia has created a civil cause of action for the wrongful conversion of personal property," *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (citing O.C.G.A. § 51-10-1), and the Eleventh Circuit has recognized that "[t]his statutory provision covers the unauthorized seizure of personal property by police officers. Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law," *id.* (quoting *Byrd v. Stewart*, 811 F.2d 554, 555 n. 1 (11th Cir. 1987)). Accordingly, "[b]ecause [Plaintiff] has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred." *Id.*; *see also Burlison v. Rogers*, 311 F. App'x 207, 208 (11th Cir. 2008) (finding that "as long as some adequate postdeprivation remedy is available, no due process violation has occurred.").

Because Plaintiff has failed to establish any violation of a federal right, Sheriff McLemore is entitled to summary judgment on Plaintiff's Section 1983 claims.

## II.    State Claims

Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citing P*almer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir.1994). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 70 F.3d at 1089.

The Court finds that any state law claims asserted by Plaintiff should be dismissed to allow him to pursue those claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. In addition, Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012); *see also. See* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). Although it may be more convenient for Plaintiff to continue litigating his case in this Court, neither judicial economy nor fairness to other litigants support retaining jurisdiction over the state law claims while delaying justice in other cases where the Court retains original jurisdiction. Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## **CONCLUSION**

In light on the forgoing, Defendants' Motions for Summary Judgment (Docs. 25, 27) are (Docs. 25, 27) **GRANTED**. Plaintiff's Section 1983 claims against Sheriff McLemore are **DISMISSED with prejudice** and Plaintiff's remaining state law claims are **DISMISSED without prejudice**.

**SO ORDERED,** this 31st day of March, 2016.

                                                  /s/ Leslie J. Abrams
                                           **LESLIE J. ABRAMS, JUDGE**
                                           **UNITED STATES DISTRICT COURT**